[Civ. No. 10684.   First Appellate District, Division Two.—September 16, 1938.]

MARGARET HELEN McLAUGHLIN, Respondent, v. THE NORTHERN LIFE INSURANCE COMPANY (a Corporation), Appellant.

Knight, Boland & Riordan, F. Eldred Boland and R. M. Sims, Jr., for Appellant.

Gus L. Baraty and E. A. Larrecou for Respondent.

STURTEVANT, J.—The plaintiff brought suit against the defendant to recover on two different life insurance policies. She framed her complaint in two counts. In each count she pleaded that Frank McLaughlin, her deceased husband, disappeared on the 13th day of October, 1926, and that she was informed and believed that he died on said date. The action was commenced on February 10, 1936. The defendant appeared and answered. It denied nearly all of the allegations set forth in the plaintiff's complaint and set forth several affirmative defenses including a claim that the plaintiff surrendered both of said policies and that said policies were cancelled long prior to the commencement of said action. It also alleged that each cause of action was barred by the statute of limitations. The trial court made findings of fact in favor of the plaintiff on each and all of the issues and from the judgment entered the defendant has appealed.

The first point made by the defendant is that the evidence did not show that plaintiff's husband died while the policies were in force. In presenting that point the defendant contends that while the evidence introduced by the plaintiff showed Frank McLaughlin disappeared October 13, 1926, and had not since been heard from, nevertheless the evidence did not show the date of the death of said McLaughlin. The

defendant does not set forth the evidence. The plaintiff concedes the point of law contended for by the defendant but claims there was substantial evidence from which the jury was justified in inferring death occurred while the policies were in force. In that behalf the plaintiff states: "The time of death can be found to be the date of the disappearance or any time short of the seven year period, and to justify such a finding it is not necessary to produce an eye witness, or otherwise to show, that the absent one encountered within the period some specific peril likely to produce death." (*Estate of Christin*, 128 Cal. App. 625 [17 Pac. (2d) 1068].) That there was substantial evidence supporting the plaintiff's contention that her husband met death on or about October 13, 1926, she calls our attention to the following facts: The night before Frank McLaughlin disappeared, he had in his pocket a large amount of money in currency. He received a telephone call. The plaintiff answered the telephone. The person calling did not give his name but insisted on speaking to plaintiff's husband. The party was a man who spoke with considerable foreign accent. Plaintiff's husband went to the telephone and was heard to make an appointment with said party for the following morning at which time, according to the drift of the telephone conversation, he was to give said party employment as a solicitor. The next day Frank McLaughlin left his home at Yakima, Washington, driving his own automobile. Later that automobile was found. It was then at Wilmar, California. At that time it had attached to it a stolen license plate. The plaintiff also shows that at the time Frank McLaughlin left home he had in his safe deposit box his adjusted service certificate as a world war veteran. Although he was entitled to draw against said certificate, no claim was ever made thereon. Another fact was introduced in evidence which also had a tendency to support the plaintiff's contention. In an effort to settle her claim for insurance, the plaintiff called on Mr. Moore, the defendant's agent at Portland. As a result of that conversation Mr. Moore stated he was going to the head office at Seattle and when he returned he would again take the matter up with her. When he returned Mr. Moore stated to her if she would deliver the $2,500 policy to him he would disclose absolute confidential news that her husband committed suicide and would tell her how, and when, and where

the body was found. Such statement indicated the defendant corporation had information as to what had happened to Frank McLaughlin. There was evidence of irregularities in the accounts of the insured and that such facts were brought to her attention and she admitted them. She denied she had done so. The record does not show the nature nor the amount of such irregularities as of the date of the disappearance of the insured. There was evidence to the effect that the relations existing between the insured and his wife were, at times, not pleasant. There is no evidence that those strained relations existed at the time of his disappearance. The plaintiff testified such relations, at said time, were not strained. There was evidence the plaintiff had declared the insured was a drinking man. The plaintiff testified she never made such declarations. Twelve years have elapsed now since his disappearance. Search by his friends, his fraternal brothers, his relatives, the authorities, and by the insurance company has failed to produce evidence that he is living or was living after the last effective date of the policies. Pointing to these several circumstances the plaintiff contends, and we think correctly, that the record contains evidence supporting the verdict of the jury that Frank McLaughlin died on or about October 13, 1926.

■ Before discussing other points it is necessary to set forth additional facts. On October 13, 1926, Mrs. McLaughlin held a policy on her own life issued to her by the defendant. She had in her possession a policy, on the life of her husband, issued by the defendant September 14, 1925, which was for $2,500. She also had a policy on the life of her husband issued by the defendant June 18, 1926, which was for the sum of $5,000. The payment of the initial premium on that policy carried it forward one year. On the policy for $2,500 the combined premiums were $11.75 per month. After the disappearance of her husband the plaintiff paid $23.50 in premiums. All payments were, at first, made to Mr. Peterson, manager of the Yakima office. The plaintiff then went to Portland. There she called on Mr. Moore, manager of the office of the defendant. The result of that call was such that Mr. Moore went to her apartment. There she turned over to him for inspection all of her policies. He refused to accept premiums on the policy for $2,500 until he consulted the home office at Seattle. The policy for

$5,000 he appropriated and did not return to her. On returning from Seattle Mr. Moore stated to the plaintiff that if she would turn over the $2,500 policy he would repay $23.75, the premiums she had paid, and would communicate to her the facts regarding the suicide of her husband. He would tell her how and when the insured committed suicide and about the finding of his body. The plaintiff testified she turned over the policy and received the check for $23.75, but that Mr. Moore did not tell her any of the facts regarding the suicide of her husband. The plaintiff never saw the $5,000 policy again until she saw it in court. The defendant produced a draft dated June 9, 1927, for $25, and an endorsement which purported to be a release of the obligations of the defendant under that policy. The plaintiff testified the endorsement on the draft was not her signature.

In September, 1930, the plaintiff and Mr. Bamford, the head of the defendant corporation, met at the office of the insurance commissioner in Seattle, Washington. The plaintiff testified that at that time Mr. Bamford told her if she would leave the defendant hold the policies until seven years after October 13, 1926, that then if McLaughlin had not been found the defendant would pay both policies. She acted accordingly, but had not been paid.

The defendant asserts the evidence demonstrates plaintiff surrendered the policies of insurance, that she made no attempt to rescind, and that she is barred from questioning such surrender. In reply the plaintiff does not controvert that both policies were at the time of the trial produced from the possession of the defendant, however she earnestly contends the evidence did not show she ever surrendered either policy or consented to the cancellation thereof. On the other hand she at all times contended that by certain fraudulent practices the agents of the defendant wrongfully obtained possession of the policies. On the issues of fact so presented to the jury, the evidence may be said to be conflicting, but the jury found the facts in favor of the plaintiff and such findings may not be disturbed at this time.

█ Having found there was no agreement of surrender or cancellation, it is clear the jury did not err in finding there was no contract that should be rescinded, nor was there any sum to be tendered back. It is not claimed that both policies were not in force when McLaughlin disappeared

(that is when he died, as found by the jury) hence the plaintiff was not bound to pay premiums. Not being so bound she was entitled to receive back payments inadvertently made by her. That she did, but she received no other sum. However she offered in open court to repay even those sums but the offer was not accepted.

The real claim of the defendant is that the plaintiff is precluded by her laches. It claims, in effect, that the plaintiff should have rescinded the alleged surrender, and, not having done so, she may not attack the evidence offered in support thereof. In other words, it claims she should have maintained an action to rescind, and then, if successful, she could have maintained an action on the policies. We think she was not bound to do so, but was entitled to attack the evidence of a purported surrender when such evidence was offered. (*Field* v. *Austin*, 131 Cal. 379, 382 [63 Pac. 692].)

The judgment and orders appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1938.